## Green v. May, et al.

(Decided June 7, 1912.)

### Appeal from Grant Circuit Court.

1. **Principal and Surety—Presumption—Relation as Surety May be Shown.**—Where the names of two or more persons appear to an obligation it will be presumed, unless a different relation is shown by the language of the writing, that all are principals; but in an action on such an instrument any of them may, without an allegation of fraud or mistake therein, allege and show that his relation thereto is only that of a surety.

2. **Surety—Apparent Obligor—Defense that He Signed as Attesting Witness.**—If, however, an apparent obligor, when sued as a surety upon the instrument, seeks to avoid liability on the ground that he only signed it as an attesting witness, but by the fraud of the payee, or mistake on his part, was induced to write his name to the instrument in such a way as made him an apparent surety therein, he must allege in his answer and prove such fraud or mistake.

3. **Surety—Whether Signing was as Surety or as Attesting Witness.**—The only issue in this case between appellant and appellee being, whether the latter signed the contract sued on as surety for its performance or in the capacity of attesting witness; and the jury having found he was only an attesting witness, we cannot disturb the verdict as there was evidence to support it.

CLORE, DICKERSON & CLATON, H. G. BOTTS and O. S. HOGAN for appellant.

C. C. ADAMS, WM. CARNES for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On April 5, 1910, the appellant, R. C. Green, entered into a written contract with D. May, whereby he sold to him at the price of 7¼ cents per pound, from eighteen hundred to twenty-five hundred marketable lambs, grown in the year 1910, to be delivered by appellant to May on the cars at Sanders or Sparta Station, one half June 20, the other half July 20, 1910, and paid for by May when delivered.

The contract was awkwardly written upon a single leaf of a small day book and is here copied in its crude form:

"April 5th, 1910.

"We this day bought up from R. C. Green from eighteen hundred to twenty-five hundred lambs to be put on the market at Sander or at Spartiy from June 20th, until July 20, at 7¼ cents a lbs to be Murchable First Delivery June 20, Second July. 20, there is not to be any waid furder off than Harrisburg.

"R. C. GREEN,

"D. MAY,

"ALSON CALLENDER."

It appears that D. May received and paid for 682 of the lambs thus purchased of the appellant, Green, but that he refused to receive or pay for 1,607 others, which appellant offered to deliver him. Thereupon appellant brought suit in the court below against him and the appellee, Alson Callender, for the damages he sustained by May's breach of the contract. The petition, in appropriate terms. set out the contract; alleged its breach; the weight of the lambs May refused to receive and the loss resulting to the appellant therefrom, which was the difference between the price appellant was to receive under the contract from May for the lambs at the place of delivery, and what he was compelled to sell them for on the market at the same place; this difference or loss being, as alleged, $1,707.04.

The appellee, Alson Callender, was joined as a defendant in the action, because, as alleged in the petition, he signed and became bound on the contract as surety for May. It was further alleged in the petition that Callender had, with the intent to defraud his creditors and to evade paying appellant loss he sustained by reason of May's violation of his contract in respect to the lambs, conveyed and otherwise disposed of his property of every kind. Upon these averments appellant caused to be issued a general attachment against the property of Callender. The latter filed an answer denying liability upon the contract and, in substance, averring he was not a surety thereon, but only signed it at the request of appellant as a witness in attestation of the signature of D. May; but that by the fraud of appellant and mistake on his part he was entrapped into signing his name under that of the principal, May, in a manner that made him appear as the latter's surety. The answer also controverted the grounds alleged in the petition for the attachment procured by appellant, and prayed

that the attachment be discharged. Appellant filed a reply containing a traverse of all affirmative matter of the answer, which completed the issues between himself and the appellee, Callender. The defendant, May, though duly summoned, failed to answer or otherwise make defense to the action. The trial of the case resulted in a verdict and judgment in favor of the appellee, Callender; and appellant's dissatisfaction with the judgment and refusal of the circuit court to grant him a new trial, led to this appeal.

The facts disclosed by the bill of evidence were, in brief, that appellant was in the spring of 1910 engaged in the business of buying lambs, and that he had, prior to the making of the contract with May, purchased of many farmers in Owen and Grant counties their lambs of that year. He made May's acquaintance through the appellee, Callender, who introduced him to appellant as a lamb buyer from "Jersey City." The contract made by appellant with May was written by the appellee, Callendar, in the presence of the contracting parties.

According to the testimony of the appellant, before the contract was written or signed by the parties, he, in substance, informed May and Callender that, as he was unacquainted with the former or his financial condition, he (May) must furnish security for his compliance with the contract; whereupon the appellee, Callender, agreed to become his surety, to which appellant assented; and that the contract was then written by Callender and signed by the appellant, May and Callender; the latter attaching his signature to the paper as May's surety.

Much of appellant's testimony was directed to showing that the appellee, Callender, was interested, either as a silent parner with, or agent for, May, in the contract made by the latter with the appellant for the purchase of the lambs; and that he not only introduced May to appellant and assisted him in procuring the contract, but that he also bought with May, or for him, other lambs than those purchased from appellant. W. T. S. Blackburn, cashier of the Dry Ridge Bank, testified in appellant's behalf as to appellee's association with May in the purchase of lambs from persons other than appellant, and as to appellee's leaving in the hands of his (Blackburn's) wife, a check or money appellee had received from May to be used in paying for lambs. The purpose of this testimony was to show that appel-

lee was a silent partner of or agent for, May, and had such an interest in the purchase of lambs from appellant under the contract of April 5, 1910, as made him willing to become the surety of May therein.

Although appellant's testimony as to what occurred when the contract with May was written and signed, was not corroborated by that of any other witness, it shows that what he claims to have done with respect to the transaction, was consistent with what would be expected of an ordinarily prudent business man, similarly situated; for naturally a man of ordinary business sagacity, in dealing with a stranger like May, would demand of him, as appellant claims he did, security for the performance of the contract. Besides, the contract itself imports that appellee's name was signed thereto, either as principal or surety, for neither in language or form does it indicate that his relation to the instrument was that of an attesting witness. That his relation to the instrument in question was that of surety is averred in the petition, and, in order to overcome the presumption arising on the face of the instrument that appellee signed it as surety, it was incumbent on him not only to allege and prove that he signed the contract as an attesting witness, but also that his failure to indicate on the instrument that such is his relation thereto, was caused by the fraud of appellant or his own mistake.

May was not at the trial and consequently did not testify in the case; but appellee in testifying admitted, as in his answer, that he signed the contract, claiming, however, that he did so only as an attesting witness, at the request of appellant, and that he placed his signature at the place designated by appellant. He also testified that he was not asked by appellant to become surety on the paper, nor did the latter demand of May security thereon. Upon being asked if he wrote the contract, appellee admitted that he did, but claimed that it was written at the dictation of the appellant and that the latter fraudulently induced him to place his signature to the instrument at the place and in the manner in which it was done, for the purpose of making it appear that appellee was the surety therein instead of an attesting witness, and that he in ignorance of appellant's fraudulent purpose, and by mistake, complied with the request by writing his name at the place indicated by appellant.

Appellee's testimony as to what took place when the contract was executed was corroborated by that of Charles Tibbleman and Melville Cramer, present at the time and both of whom seemed to have been associated with May and appellee in the business of purchasing lambs. While there was other evidence introduced by the parties, that to which we have referred was substantially all that had any bearing on the only issue in the case, which was whether appellee was a surety in the contract, or merely an attesting witness thereto.

It is insisted for the appellant that he was prejudiced by the admission on the trial of incompetent evidence, to the introduction of which he objected at the time. The evidence referred to consisted, in part, of a statement made by appellee that he received no commission out of the transaction involved in the contract between appellant and May. In view of appellant's evidence conducing to prove that appellee, by reason of his connection with May, had such an interest in the contract between the latter and the appellant, as furnished a motive for his becoming surety for May, we think the testimony of appellee referred to was competent, as it conduced to prove that appellee was not interested in the contract between appellant and May, and that there was nothing in his association with May which furnished a motive for his becoming the latter's surety. Appellant also complains that the trial court erred in permitting appellee to testify as to amounts of money he paid various persons, some of which was for lambs purchased of them; and as to his transaction with Blackburn in procuring money to be thus used. This testimony, as well as that of Blackburn, might properly have been received by the court on a trial of the attachment, as it could be considered in determining whether appellee had disposed of his property for the purpose of defrauding his creditors, alleged as a ground for the attachment; but we are unable to see how it could throw any light on the question whether or not appellee, by signing his name to the contract between May and the appellant, became bound thereon as surety. The evidence was therefore irrelevant, but appellant cannot complain of the court's failure to exclude it, as he opened the way for its admission by first introducing Blackburn, whose testimony it was intended to contradict.

Appellant also complains of the form of the verdict,

and insists, that as it did not find in his favor against May, the judgment entered upon so much thereof as found in favor of appellee, should not have been rendered. The verdict was as follows:

"We the jury find for Alison Callender, the defendant. Alvin Bowe, Foreman."

It will be observed that there was no verdict as to May, although the jury were peremptorily instructed to find for the appellant, as against him, the amount of the claim sued for. We, however, fail to see why this error on the part of the jury should have prevented the entering of the judgment in favor of appellee upon the finding as to him, as it determined the only issue in the case affecting his rights.

The error of the jury in failing to return a verdict for the appellant, as against May, could properly have been corrected by the court's directing the jury to amend their verdict to that extent before discharging them. Indeed, it was unnecessary for the court to refer to the jury the matter of the finding as between appellant and May; as upon the pleadings judgment by default could have been rendered by the court in appellant's favor against May, taking as confessed the allegations of the petition, except as to the amount of damages. While it is true that the recovery sought was for unliquidated damages, the averments of the petition, and testimony of appellant given upon the trial, established the facts which fixed the amount of his damages and entitled him to a judgment at the hands of the court even in the absence of a verdict. Section 379, Civil Code.

Appellant complains that the verdict of the jury does him great injustice, but does not contend that there was no evidence to support it, or that it was flagrantly against the evidence. It is not our province to say whether or not the verdict of the jury was in accordance with the weight of the evidence. Our duty goes no farther than to determine whether there was evidence to support the verdict, and if so, though it be not such a finding as we would have made from the evidence, it must nevertheless stand, unless it is made to appear from the record on the appeal that there was error on the part of the trial court, which can be said to have prejudiced the substanial rights of the appellant.

It is unnecessary for us to consider or determine whether the instructions given by the trial court prop-

erly advised the jury of the law of the case, as no objection was made to them by appellant in the court below.

Finding in the record no legal cause for disturbing the verdict the judgment is affirmed.